IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| Argus Health Systems, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | 10-00187-CV-W-JTM |
| Benecard Services, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Benecard Services, Inc. ("Benecard") administers prescription drug benefits programs that are offered by employee health benefit plans. Beginning in 2003, Argus Health Systems, Inc. ("Argus") began providing claims processing services for Benecard. Argus would process and pay claims to pharmacies for prescription drugs that had been dispensed to participants in a health benefit plan administered by Benecard. Benecard would then periodically reimburse Argus for the pharmacy payments and pay processing fees to Argus. During the business relationship, Argus processed approximately 10 million claims for Benecard.

In December of 2008, Benecard and Argus entered into a letter agreement setting forth several terms of their business relationship ("the December 2008 Letter"). In part, the December 2008 Letter set out to include an understanding as to the time frame of when Benecard had to make periodic payments to Argus – a point of contention throughout the parties business relationship. Specifically, the December 2008 Letter provided that Benecard would make monthly periodic payments within fifteen days of the receipt of Argus' monthly invoice and

would pay Argus for disbursements at the end of each financial cycle. However, this provision was not designated as a "binding agreement" in the December 2008 Letter (some other aspects of the relationship were so designated).

The December 2008 Letter further stated that it would expire on December 31, 2009 unless the parties extended the agreement or executed an entirely new services agreement. Based on this language in the December 2008 Letter, on September 17, 2009, Benecard informed Argus in writing that the business relationship would conclude as of January 1, 2010. In response, on September 25, 2009, Argus wrote to Benecard and noted that the termination would "significantly impact" its business and, as a result, Argus sought an agreement from Benecard changing the processing amounts paid to Argus[1] and sought "Benecard's commitment to timely fund all reimbursements due to pharmacies."

On September 29, 2009, the CEO for Benecard, Dave Karlin, replied to Argus' letter, stating, in relevant part:

> You have our commitment that we will fund all claims processed by you as we have in the past. It is our intent to make this an orderly and businesslike transition with minimal impact to both organizations. We have worked together as partners toward a common goal for many years and we do not intend to let that change now. I trust this response is sufficient to address the concerns raised in your letter and ensure that you will continue to process our claims as you have done for the last many years.

In addition, on October 2, 2009, Benecard and Argus executed another letter agreement ("the October 2009 Letter") seeking to modify the terms of the December 2008 Letter. The October 2009 Letter provided, in part:

---

[1] Under the December 2008 Letter, Argus charged a monthly minimum claims processing fee of $42,150. Argus sought to have this monthly amount increased to $100,000.

2

>    (1)   the parties agreed that Argus would continue to provide claims processing services to Benecard through December 31, 2009, in accordance with the December 2008 Letter;
>
>    (2)   the monthly minimum claims processing fee due to Argus was increased to $100,000; and
>
>    (3)   the parties agreed for "[t]he resolution of any currently outstanding claims processing issues by December 31, 2009 and amounts due Benecard from Argus."

Thereafter, Benecard fully (and apparently timely) periodically funded Argus for claims and fees presented by Argus (approximately $23.7 million) until the last financial cycle ending December 31, 2009. With regard to that final request for reimbursement, on January 8, 2010, Argus requested reimbursement funding of approximately $1.6 million. In response, Benecard stated that it wished to seek an audit of Argus' claims requests dating back to 2004 and asserted a right to offset amounts claimed by Argus with any amounts that were found to have been improperly processed by Argus.

Shortly thereafter, Argus initiated the present litigation. Currently pending before the Court is the motion for partial summary judgment filed by Benecard as to Count III[2] of the First Amended Complaint. For the reasons set out herein, the Court grants the motion for partial summary judgment. This ruling is limited to Count III of the First Amended Complaint and the Court makes no judgments as to other aspects of this litigation.

---

[2]   Argus has also sued Benecard under a theory of breach of contract [Count I] and unjust enrichment [Count II]. The legal efficacy of those causes of action is not before the Court.

Count III of Argus' First Amended Complaint purports to asserts a claim of fraud in the inducement[3] against Benecard. Specifically, Argus asserts that Benecard committed fraud when Karlin wrote to Argus and expressed Benecard's "commitment [to] fund all claims processed by [Argus] as [Benecard had] in the past." According to Argus' pleading, this "representation was false because Benecard was not committed to funding the claims processed by Argus as it had in the past, as evidenced by Benecard's refusal only a few months later, to make payment."

The parties seemingly agree that the question is governed by Missouri substantive law and, pursuant to that law, a claim of fraud in the inducement requires a plaintiff to establish that:

(1) the defendant made certain material representations to the plaintiff;

(2) such representations were false when made;

(3) the defendant knew the representations were false;

(4) the representations were made with the purpose of deceiving the plaintiff;

(5) the plaintiff was, in fact, deceived;

(6) the plaintiff reasonably relied on the defendant's false representations in entering into an agreement; and

(7) the plaintiff suffered damages as a proximate result of the fraudulent misrepresentations.

*Docmagic, Inc. v. Mortgage Partnership of America, LLC*, 2010 WL 2326047, op. at *3 (E.D. Mo. Jun. 8, 2010); *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 386 (Mo. 1993) (*en banc*).

---

[3] In general, fraudulent inducement occurs when a fraudulent misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved. *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 223 F.3d 873, 891 (8th Cir. 2000) (Lay, C.J., concurring in part and dissenting in part).

4

In its motion for partial summary judgment, Benecard limits its argument to two elements, arguing that Argus, as a matter of law, cannot establish that (1) Benecard (*i.e.*, Karlin) knew on September 29, 2009, that Benecard was not committed to funding the claims processed by Argus, and (2) Argus reasonably relied on Benecard's representation.[4] The Court will address each argument in turn and in the alternative.

With regard to Karlin's statement on September 29, 2009, regarding Benecard's intention to take future actions, Missouri law is settled that "[a] promise accompanied by a <u>present intent not to perform</u> is a misrepresentation sufficient to constitute fraud." *Chesus v. Watts*, 967 S.W.2d 97, 111 (Mo. App. [W.D.] 1998) (*quoting Stewart v. Kirkland*, 929 S.W.2d 321, 323 (Mo. App. [S.D.] 1996)) (*emphasis added*). In other words, Argus must establish Karlin's state of mind or intent on September 29, 2009.[5] Such a showing is obviously difficult and, as such, the law recognizes:

> Intent in nearly every case is proven by circumstantial evidence, and failure to provide direct evidence of such intent in an improper basis for summary judgment.

*Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 20 (Mo. 1995) (*en banc*). In its Suggestions in Opposition to Defendant's Motion for Partial Summary Judgment [Doc. 90], at pp. 26-27, Argus identifies four areas of circumstantial evidence that it contends create genuine issues of material fact as to Karlin's intent on September 29, 2009.

---

[4] As with any cause of action, "[a] failure to establish any one of the essential elements of fraud is fatal to recovery." *Emerick v. Mutual Benefit Life Insurance Co.*, 756 S.W.2d 513, 519 (Mo. 1988) (*en banc*).

[5] Absent evidence of present intent, then any promise made by Karlin falls within the general rule that "[m]ere statements of opinion, expectations, and predictions for the future are insufficient to authorize a recovery for fraudulent misrepresentation." *Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 940 (Mo. App. [S.D.] 1996).

5

First, Argus points to evidence that Benecard had determined – prior to September 29, 2009 – to move all of the processing of prescription drug claims to a new in-house division it had created. However, Argus knew that this was Benecard's intent prior to September 29, 2009. Moreover, Argus fails to elucidate any connection or inference between Benecard starting up its own processing enterprise with a decision to withhold a final payment from Argus.

Second, Argus notes that there is evidence that Karlin was "disappointed" that Argus sought to increase its monthly minimum claims processing fee to $100,000. According to Argus, when it presented its final invoice to Benecard on January 8, 2010, Karlin initially attempted to renegotiate the claims processing fee. According to Argus, "after Argus refused [to renegotiate] it was then that Karlin first brought up the need for an offset." This evidence, to the extent it has relevance to the offset request at all, actually tends to show that the intent to ask for the offset did not arise until January of 2010.

Third, Argus draws the Court's attention to deposition testimony from Karlin regarding the need for an audit:

> Q: Mr. Karlin, did Benecard always intend on doing an audit at the end of its relationship with Argus?
>
> A: Always?
>
> Q: Yeah.
>
> A: Do you mean from the beginning of the relationship?
>
> Q: Yes.
>
> A: I don't know, I wasn't there at the beginning of the relationship.
>
> Q: How about when you joined Benecard, was it your

> > intention at the time that the relations would end
> > with Argus, that Benecard would conduct an audit?
>
> A:   It was my belief that when you send tens and
>      hundreds of millions of dollars to someone to pay,
>      that an audit is part of the process, yes.
>
> Q:   Did you ever tell anybody at Argus that at the end
>      of the relationship, you would be conducting an
>      audit, Benecard, would be conducting an audit?
>
> A:   Not per [se]. Not until we did tell them.
>
> Q:   That was after the relationship was terminated?
>
> A:   Correct.

The above testimony would certainly create a jury question as to fraud if the issue was whether Karlin promised not to conduct an audit of Argus. However, the issue here is whether Karlin intended – on September 29, 2009 – to not fully pay Argus for claims. As set out in Benecard's communications with Argus, there are two separate issues arising in January of 2010, to wit: (1) Benecard wanted an audit performed on the historical claims processed by Argus, and (2) Benecard asserted a right of offset that might reduce the amount owed to Argus. The two are not necessarily connected, *i.e.*, Benecard could have insisted on an audit and still made the final payment to Argus (and then sought reimbursement based on the audit). The issue for the Court, then, is whether Karlin's intent on September 29, 2009, to have a post-relationship audit[6] is sufficient circumstantial evidence to create a jury question on whether Karlin also had the intent on September 29, 2009, to not pay Argus in full. Although a closer call than the other arguments raised by Argus, the Court nonetheless concludes that the evidence, and the reasonable

---

[6] Benecard's expert witness, Susan Hayes, opines that such audits are industry standard procedure.

7

inferences to be drawn therefrom, does not create a jury issue sufficient to defeat summary judgment. As noted by one Missouri court:

> While the burden of establishing a right to judgment as a matter of law rests with the moving party and any evidence which demonstrates a genuine issue of material fact will defeat the moving party's *prima facie* showing, an issue is genuine only if it is real and substantial; it may not consist of conjecture, theory and possibilities.

*Birdsong v. Christians*, 6 S.W.3d 218, 228 (Mo. App. [S.D.] 1999) (*citations and internal punctuation omitted*).[7]

Finally, Argus argues that it is inconsistent for Benecard to contend it always intended to fully compensate Argus when it now seeks an alleged offset for actions taken years before September 29, 2009. The inconsistency argued by Argus is neither obvious nor circumstantial evidence of Karlin's state of mind on September 29, 2009.

In its First Amended Complaint, Argus raised another evidentiary fact, namely that Benecard's "representation was false because Benecard was not committed to funding the claims processed by Argus as it had in the past, as evidenced by Benecard's refusal only a few months later, to make payment." However, Missouri case law is stridently clear that the mere "[f]ailure of performance is insufficient to establish . . . intent." *Brenneman v. Andes & Roberts Brothers Construction Co.*, 506 S.W.2d 462, 465 (Mo. App. [W.D.] 1973). *See also City of St. Joseph, Missouri v. Southwestern Bell Telephone, L.P.,* 2005 WL 6125133, op. at *10 (W.D. Mo. Jan. 7, 2005); *Stewart v. Kirkland*, *supra*, 929 S.W.2d at 322 ("Failure to perform alone, however, is not

---

[7] Put slightly differently, fraud "may not be presumed, and a party's case will fail if he can show only facts and circumstances which are equally consistent with honesty and good faith." *Washburn v. Kansas City Life Insurance Co.*, 831 F.2d 1404, 1411 (8th Cir.1987).

8

sufficient to establish the intent of the promisor at the time the agreement was made."); *Carlund Corp. v. Crown Center Redevelopment Corp.*, 910 S.W.2d 273, 279 (Mo. App. [W.D.] 1995). Indeed, any other rule would permit a fraud action to be brought anytime there was claim of breach of contract for failure of performance.

Having considered the evidenced cited by Argus – both separately and cumulatively – the Court concludes that there is not sufficient circumstantial evidence to create a jury issue as to Karlin's intent on September 29, 2009, to not fully pay Argus.

In addition to lack-of-intent, Benecard also argues that summary judgment is mandated because Argus, as a matter of law, cannot establish that it reasonably relied upon any representation made by Karlin on September 29, 2009. Specifically, Benecard asserts that the subsequent agreement reached between it and Argus (*i.e.*, the October 2009 Letter) bars any claim of reasonable reliance. Benecard's argument is based on the Eighth Circuit's opinion in *Toghiyany v. Amerigas Propane, Inc.*, 309 F.3d 1088 (8th Cir. 2002).

In *Toghiyany*, a propane cylinder refurbisher brought an action against a barbeque grill manufacturer on several theories, including a claim of fraudulent inducement. With regard to that claim, the refurbisher alleged that the manufacturer made representations that the parties would have a five-year business commitment and, based on that representation, the refurbisher entered into a contractual business relationship with the manufacturer. The actual contract entered into between the parties, however, did not include a five-year term. After the manufacturer ended the relationship (before five years), the refurbisher sued and claimed that the manufacturer made its representations never intending to keep the relationship for five years.

9

The district court granted summary judgment to the manufacturer on the fraudulent inducement claim and an appeal was filed. On appeal, the Eighth Circuit initially noted that:

> The critical element in a fraud case based on a statement of present intent is proof that the speaker, at the time of the utterance, actually did not intend to perform consistently with his words.

*Id.* at 1092 (*quoting Paul v. Farmland Industries, Inc.*, 37 F.3d 1274, 1277 (8th Cir. 1994)). The court observed that the refurbisher was arguing that "despite [the manufacturer's] representations to the contrary, it never intended the relationship to continue for five years." *Id.* However, the court concluded that the refurbisher "presented neither facts nor circumstances that could support a jury finding that [the manufacturer] knew its representations . . . were false when made." *Id.*

In addition, the court concluded that summary judgment was also properly granted to the manufacturer because the refurbisher could not establish reasonable reliance on the representation. Of import to the court were that agreements negotiated between the parties after the alleged representation – agreements that did not contain a five-year term. The court reasoned:

> If the presence of a term of years was in fact the factor upon which [the refurbisher] had relied in entering into the . . . agreement with [the manufacturer], one would not expect that such a term would have been absent from a document prepared and signed by [the refurbisher].

*Id.* (*citing Cook v. Little Caesar Enterprises, Inc.*, 210 F.3d 653, 658 (6th Cir.2000) ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement.")).

10

Similarly in this case, after Karlin made the representation of September 29, 2009, Benecard and Argus entered into a new letter agreement modifying some of the terms of their prior December 2008 Letter. The new October 2009 Letter does not include any binding agreements regarding payments in full to Argus. Moreover, while the October 2009 Letter does not specifically address the issue of audits or offsets, it does contain language providing for "[t]he resolution of any currently outstanding claims processing issues by December 31, 2009 and amounts due Benecard from Argus." Given the business relationship between Benecard and Argus, it is difficult to fathom what amounts Argus could owe Benecard except in the case of improper payments or overpayments.[8] Under these facts, and in light of the Eighth Circuit opinion in *Toghiyany*, the Court finds – in the alternative – that summary judgment on Count III is proper inasmuch as Argus cannot establish reasonable reliance on any representation made by Karlin on September 29, 2009.

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion For Partial Summary Judgment, filed July 22, 2011 [Doc. 75] is **GRANTED**. Accordingly summary judgment on Count III of the First Amended Complaint [Doc. 48] is entered in favor of Defendant Benecard Services, Inc.

      */s/ John T. Maughmer*
     **JOHN T. MAUGHMER**
   **U. S. MAGISTRATE JUDGE**

---

[8] It is worth noting that the October 2009 Letter was drafted by Argus.